## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

SOUTHERN OHIO MEDICAL CENTER : 
1248 Kinneys Lane : 
Portsmouth, Ohio 45662 :    Case No.
:
Plaintiff, :
:
v. :
:
MICHAEL O. LEAVITT, Secretary of the :
United States Department of Health and :
Human Services :
200 Independence Avenue, S.W. :
Washington, D.C. 20201 :
:
Defendant. :
:

## COMPLAINT

The above-named Plaintiff (the "Hospital"), by and through its undersigned counsel,

states the following in the form of this Complaint against Michael O. Leavitt, Secretary of the

United States Department of Health and Human Services (the "Secretary"):

## I.     INTRODUCTION

1.     The instant action involves two related challenges arising from the Hospital's

Medicare reimbursement for fiscal year 1995.

2.     First, the Hospital challenges the December 7, 2005 decision by the Provider

Reimbursement Review Board (the "PRRB"), wherein the PRRB denied the Hospital's request

for expedited judicial review ("EJR") after concluding that the PRRB did not have jurisdiction

over the Hospital's Medicare appeal for fiscal year 1995.  The Medicare statute and applicable

regulations provide that the Hospital has a right to seek judicial review of this final determination by the PRRB.

3.      Second, the Hospital challenges the Secretary's failure to correctly reimburse the Hospital for certain Medicare payments.  The Medicare statute directs the Secretary to make additional Medicare payments, called disproportionate share hospital ("DSH") payments, to hospitals that serve "a significantly disproportionate number of low-income patients." See 42 U.S.C. § 1395ww(d)(5)(F).  Under the statute, the term "low-income patients" includes patients eligible for medical assistance under a State Plan approved under Title XIX.  In computing the Hospital's low-income patient percentage for certain time periods, the Secretary excluded hospital days attributable to patients eligible for Ohio's Hospital Care Assurance Program ("HCAP"), which is part of Ohio's State Plan of medical assistance approved under Title XIX. The Secretary's exclusion of HCAP days from the DSH calculation contravenes the plain and unambiguous wording of the Medicare statute, is inconsistent with clear congressional intent, and is arbitrary, capricious and otherwise contrary to law.  The Medicare statute provides that the Hospital has a right to seek judicial review of the Secretary's exclusion of HCAP days from the Hospital's DSH calculation.

## II.    JURISDICTION AND VENUE

4.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq. (the "Medicare Statute"), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.

5.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1).

6.      Pursuant to 42 U.S.C. § 1395oo(f)(l), venue for a plaintiff such as this Hospital is proper in the United States District Court for the District of Columbia.

### III.    PARTIES

7.      Plaintiff Southern Ohio Medical Center, 1248 Kinneys Lane, Portsmouth, Ohio, is an inpatient hospital that serves a disproportionate share of low-income patients and is assigned Medicare Provider Number 36-0008.

8.      Defendant Michael O. Leavitt is the Secretary of the Department of Health and Human Services, the federal department responsible for the administration of the Medicare and the Medicaid programs.

### IV.    THE MEDICARE PROGRAM

9.      Congress enacted the Medicare Program (Title XVIII of the Social Security Act) in 1965.  As originally enacted, Medicare was a public health insurance program that furnished health benefits to participating individuals once they reached the age of 65.  Over the years, it has been expanded to provide health benefits to qualifying disabled persons and to individuals suffering from end-stage renal disease.

10.      Among the benefits covered by Medicare are hospital services.  For cost reporting years beginning before October 1, 1983, the Medicare Program reimbursed hospital services on a "reasonable cost" basis.  42 U.S.C. § 1395f(b).  Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse most hospitals for inpatient operating costs.  42 U.S.C. § 1395ww(d).  Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups, subject to certain payment adjustments.

11.      The Secretary has delegated much of the responsibility for administering the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration (herein collectively referred to as "CMS").  The

Secretary, through CMS, contracted out many of his audit and payment functions under Medicare to organizations known as "fiscal intermediaries."

12.     At the close of a fiscal year, a provider of services must submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs apportioned to Medicare. 42 C.F.R. § 413.24(f). The intermediary is required to analyze and audit the cost report and inform the provider of a final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR"). 42 C.F.R. § 405.1803.

13.     A provider dissatisfied with its intermediary's determination may file an appeal with an administrative body called the Provider Reimbursement Review Board ("PRRB") within 180 days of the date of the NPR. 42 U.S.C. § 1395oo(a).

14.     A provider that has filed an appeal with the PRRB may ask the PRRB to determine that it lacks the authority to decide "a question of law or regulations relevant to the matters in controversy…." 42 U.S.C. § 1395oo(f)(l). Such a request is generally known as a request for EJR.

15.     If the PRRB determines that it lacks the authority to decide the issue raised by the provider in its EJR petition, a provider may obtain judicial review of that issue by filing a lawsuit within 60 days of the PRRB's EJR determination or, if the PRRB fails to render such a determination within 30 days, then a provider may bring a civil action within 60 days after the expiration of the 30-day period. 42 U.S.C. § 1395oo(f)(l).

16.     The PRRB's EJR determination is considered a final decision and is not subject to review by the Secretary. 42 U.S.C. § 1395oo(f)(l).

-4-

17.    In addition to filing appeals, providers may, in certain circumstances, obtain relief through an intermediary's reopening of its cost report, without the involvement of the PRRB. 42 C.F.R. § 405.1885.

18.    If an intermediary agrees to reopen the provider's cost report, the intermediary will issue a notice of reopening, and the provider is then permitted to present additional evidence or argument in support of its position. 42 C.F.R. § 405.1887.

19.    When an intermediary reopens and revises the provider's cost report, the intermediary's decision is known as a "revised NPR."

20.    A revised NPR is considered "a separate and distinct determination or decision…." 42 C.F.R. § 405.1889. Thus, the revised NPR constitutes a new final decision, subject to the appeal rights discussed above.

## V.    THE MEDICARE DSH CALCULATION

21.    When Congress enacted Medicare PPS in 1983, it authorized the Secretary to provide an adjustment to PPS payments for hospitals that served a disproportionate share of low-income patients. 42 U.S.C. § 1395ww(d)(5)(C)(i).

22.    The Secretary delegated to CMS the authority to administer DSH adjustments as part of the PPS reimbursement system. CMS, in turn, delegates the responsibility to the fiscal intermediaries who notify hospitals of their DSH adjustments in their NPRs.

23.    The intermediaries calculate the DSH adjustment by adding two fractions known colloquially as the "Medicare Proxy" and the "Medicaid Proxy." 42 U.S.C. § 1395ww(d)(5)(F)(vi).

24.    The Medicare Proxy, which is based on the number of low-income Medicare patients served by a given provider, is not at issue in this case. 42 U.S.C. §

1395ww(d)(5)(F)(vi)(I).

25.     The Medicaid Proxy accounts for all patient days related to patients who are not entitled to Medicare Part A benefits, but who are eligible for medical assistance under a State Plan approved under Title XIX:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter, but who were not entitled to benefits under Part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

26.     A larger number of patient days in the numerator means a larger DSH adjustment for the provider.

## VI.    OHIO'S STATE PLAN APPROVED UNDER TITLE XIX

27.     Congress enacted Title XIX of the Social Security Act ("Medicaid") in 1965. Medicaid is a cooperative federal-state program that furnishes health care to persons who meet specified eligibility requirements, including low-income status.

28.     States participating in the Medicaid Program have a substantial amount of discretion in selecting the benefits provided under their Medicaid programs. 42 U.S.C. § 1396d. Nevertheless, all states must furnish certain minimum benefits under their Medicaid program, including inpatient hospital services. 42 U.S.C. §§ 1396a(a)(l0)(A), et seq., 1396(a)(1).

29.     States have some flexibility in establishing payment rates for hospital services under their Medicaid programs. 42 U.S.C. § 1396a(a)(13)(A).

30.     States that participate in the Medicaid program are required to develop a State Plan for delivery of medical assistance and submit it to the Secretary for approval. 42 U.S.C. §

1396. This Title XIX "State Plan" must comply with certain requirements of the Medicaid statute set forth in 42 U.S.C. § 1396a.

31.     The State of Ohio, at all relevant times referred to in this Complaint, maintained a valid Title XIX plan approved by the Secretary, which included HCAP.

32.     Under HCAP, Ohio hospitals are required to provide patient care to Ohio residents meeting certain low-income requirements.  HCAP provides a mechanism to pay for care to HCAP patients by compensating hospitals for the costs of providing such care.  HCAP is funded with state funds as well as federal matching payments under Medicaid (also known as federal financial participation (FFP)).  For fiscal year 1995, HCAP's eligibility criteria and funding provisions have been set forth in Ohio's State Plan approved under Title XIX.

## VII.    THE HOSPITAL APPEALS THE SECRETARY'S WRONGFUL EXCLUSION OF HCAP DAYS FROM THE HOSPITAL'S MEDICARE DSH CALCULATION

33.     On October 11, 1999, the Hospital filed a request to reopen its NPR for fiscal year 1995.  See a copy of the PRRB's December 7, 2005 correspondence attached hereto as Exhibit "A."  In its reopening request, the Hospital sought, among other things, to correct the Intermediary's failure to include all DSH eligible days (both paid and unpaid) in the Medicaid Proxy of the DSH calculation.  See Exhibit "A."

34.     The Intermediary agreed to reopen the Hospital's cost report to include eligible days in the Medicaid Proxy of the DSH calculation that the Intermediary had previously excluded.  See Exhibit "A."  The Intermediary issued a revised NPR on July 26, 2000.  See a copy of the revised NPR attached hereto as Exhibit "B."

35.     The Intermediary did not include inpatient days under HCAP in the Medicaid Proxy of the DSH calculation.

36.    Thus, on January 8, 2001, the Hospital filed a timely appeal of the revised NPR with the PRRB.  See a copy of the Hospital's appeal letter attached hereto as Exhibit "C."    In that appeal, the Hospital challenged the exclusion of HCAP days from the Medicaid Proxy of the DSH calculation.

37.    The Hospital later transferred its individual appeal to a group appeal that consisted of numerous Ohio hospitals, all of which challenged the Secretary's exclusion of HCAP days from the Medicaid Proxy of the DSH calculation (the "HCAP Group Appeal").

## VIII.  THE HCAP GROUP FILES A REQUEST FOR EJR AND THE PRRB DETERMINES THAT IT LACKS JURISDICTION OVER THE HOSPITAL

38.    By letter dated August 19, 2005, all of the hospitals in the HCAP Group Appeal filed a request for EJR with the PRRB.  A copy of the EJR petition is attached hereto as Exhibit "D." The entire contents of the August 19, 2005 Petition for EJR are incorporated herein by reference as if fully set forth at length in this pleading.

39.    On December 7, 2005, the PRRB granted EJR to various hospitals in the HCAP Group Appeal.  A copy of the PRRB's December 7, 2005 decision is attached hereto as Exhibit "E."

40.    The PRRB, however, by correspondence also dated December 7, 2005, denied EJR to the Hospital, finding that the PRRB lacked jurisdiction over the Provider's appeal.  See Exhibit "A."

41.    The PRRB Chairperson disagreed with the PRRB's decision to deny EJR to the Hospital.  See Exhibit "A" ("Suzanne Cochran, Esq. (Dissenting)").

42.    On December 9, 2005, the Hospital received notice of the PRRB's decision to deny EJR to the Hospital.  See Exhibit "A."

43.    This suit was filed within 60 days of the Hospital receiving notice of the PRRB's

denial of EJR.  Thus, this case is ripe for judicial review, and the court has jurisdiction over this

case, under 42 U.S.C. § 1395oo(f)(l).

## COUNT I – DECLARATORY JUDGMENT
## THE PRRB HAS JURISDICTION OVER THE HOSPITAL'S APPEAL

44.    The Hospital re-alleges and incorporates by reference paragraphs 1 through 43 as

if set forth at length below.

45.    The Intermediary reopened the Hospital's cost report, and issued a revised NPR

that made adjustments to the number of eligible patient days in the Medicaid Proxy of the

Hospital's DSH calculation.

46.    The Hospital filed an appeal from the revised NPR on the ground that the

Intermediary failed to include all eligible days, i.e., HCAP days, in the Medicaid proxy of the

Hospital's DSH calculation.

47.    Because the reopening was for eligible days in the Medicaid Proxy of the DSH

calculation, and the number of eligible days were adjusted pursuant to the revised NPR, the

Hospital's appeal from the revised NPR constituted a timely and valid appeal of the HCAP issue.

The PRRB, therefore, has jurisdiction over the appeal, and should have granted the Hospital's

request for EJR.

48.    In addition, in Bethesda Hospital Assoc. v. Bowen, 485 U.S. 399, 404 (1988), the

Supreme Court held that where a provider files a cost report in full compliance with the

Secretary's rules and regulations, the provider is not barred from claiming dissatisfaction with

the amount of reimbursement allowed by those rules and regulations.  The Court recognized that

in those situations, providers can claim dissatisfaction without incorporating the challenge on the

cost report. Id. Here, the Secretary's policy precludes reimbursement for HCAP days. Thus, under Bethesda, the provider is able to claim dissatisfaction without incorporating the HCAP days in its cost report. The PRRB, therefore, has jurisdiction over the appeal, and should have granted the Hospital's request for EJR.

        **WHEREFORE**, the Hospital requests relief as follows:

        (1)    A declaration by the Court that:

                (a)    The PRRB has jurisdiction over the Hospital's appeal;

                (b)    Because the PRRB has jurisdiction over the Hospital's appeal, the PRRB's decision to deny EJR to the Hospital was in error;

                (c)    The Court has jurisdiction over the Hospital to review the Secretary's failure to include HCAP days in the Hospital's DSH calculation; or in the alternative;

        (2)    An order:

                (a)    Remanding the matter to the PRRB for a determination on the Hospital's request for expedited judicial review consistent with this Court's decision;

        (3)    Attorneys fees and costs of suit incurred by the Hospital as permitted by law; and

        (4)    Such other relief as this Court deems just and appropriate.

## COUNT II – DECLARATORY JUDGMENT
## VIOLATION OF THE MEDICARE STATUTE

        49.    The Hospital re-alleges and incorporates by reference paragraphs 1 through 48 as if fully set forth at length below.

        50.    An actual case or controversy exists under 28 U.S.C. § 2201, et seq. as to whether HCAP days should be included in the DSH calculation. In particular, the Hospital herein asserts that the Secretary's current policy of excluding Ohio HCAP days from the Medicare DSH

calculation violates the Medicare statute and is unlawful.

51.     The Secretary is statutorily required to include HCAP days in the Medicare DSH calculation.

52.     The Intermediary excluded HCAP days from the DSH calculation during the time period at issue in the Complaint.  The Hospital seeks reimbursement with respect to fiscal year 1995.

53.     The Secretary's construction of 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (the Medicaid Proxy of the DSH calculation) is unlawful because it contravenes the statute's plain meaning.  The Secretary's construction is also contradicted by the legislative history.

54.     Under the Medicare statute, so long as a patient is eligible for medical benefits under a State Plan approved under Title XIX, for a particular day for which the patient receives inpatient hospital services, the patient day must be counted in the Medicaid Proxy of the DSH calculation.

55.     HCAP is part of Ohio's State Plan of medical assistance approved under Title XIX.

56.     The Secretary's current policy of excluding HCAP days from the Medicaid proxy of the DSH calculation therefore violates the Medicare statute and is unlawful.

57.     The Intermediary wrongfully excluded HCAP days for the Hospital for the fiscal year that is at issue in this Complaint.

58.     The Medicare statute requires the Secretary, CMS, and the Intermediary to include HCAP days in the DSH calculation.  The Secretary should therefore be required to issue payment to the Hospital reflecting the inclusion of HCAP days, and to recalculate the Hospital's DSH adjustment in accordance with the Medicare statute and applicable regulations.

59.    Title 42, Part 412.106(b)(4) of the Code of Federal Regulations requires that HCAP days be included in the Medicaid proxy of the DSH calculation.  To the extent the Secretary has interpreted the provision to the contrary, that interpretation is incorrect, unlawful and void.

60.    In the alternative, to the extent that Part 412.106(b)(4) purports to preclude the inclusion of HCAP days in the DSH calculation, that aspect of the regulation contravenes the Medicare statute and is unlawful, ultra vires and void.

**WHEREFORE**, the Hospitals request relief as follows:

(1)    A declaration by the Court that:

(a)    The Medicare statute requires the inclusion of HCAP days in the Medicaid proxy of the DSH calculation;

(b)    The Secretary's interpretation of 42 C.F.R. § 412.106(b)(4) so as to exclude HCAP days from the DSH calculation is unlawful;

(c)    To the extent that 42 C.F.R. § 412.106(b)(4) purports to exclude HCAP days from the DSH calculation, the regulation violates the Medicare statute and is unlawful, ultra vires and void;

(2)    An order requiring that:

(a)    The Secretary instruct the Intermediary in Ohio that the Hospital's cost report at issue must be corrected to include HCAP days, and the Hospital's DSH adjustment be recalculated in accordance with the Medicare statute and applicable regulations;

(b)    The Secretary instruct his Intermediary in Ohio to complete its audit, and make the resulting payment of additional Medicare DSH funds within 90 days of the Intermediary's receipt of the documentation from the Hospital;

(c)      The payment to the Hospital reflect all amounts to which the

Hospital is entitled under the Medicare DSH statute with Ohio HCAP days factored into the

calculation and include an award of interest thereon pursuant to 42 U.S.C. § 1395oo(f)(2);

(3)      A declaration that this Court shall retain jurisdiction in this matter until the

Secretary's recalculation of the Hospital's Medicare DSH percentage and subsequent payment to

the Hospital is complete;

(4)      Attorneys fees and costs of suit incurred by the Hospital as permitted by

law; and

(5)      Such other relief as this Court deems just and appropriate.

Respectfully submitted,

Respectfully submitted,

Murray J. Klein
DC Bar #492415
Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 facsimile
JBennett@ReedSmith.com
MKlein@ReedSmith.com

Attorneys for Plaintiff

Dated: February 6, 2006

-13-